**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| | : | |
| | : | |
| IN RE: | : | |
| | : | **MDL NO. 2621** |
| GNC HERBAL SUPPLEMENTS LITIGATION | : | |
| | : | |
| | : | |
| | : | |

**RESPONSE OF GNC DEFENDANTS IN SUPPORT OF TRANSFER OF THE HERBAL
SUPPLEMENTS LITIGATION TO THE WESTERN DISTRICT OF PENNSYLVANIA
FOR COORDINATED OR CONSOLIDATED PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1407**

Defendants General Nutrition Corporation, General Nutrition Centers, Inc., and GNC

Holdings, Inc. (collectively, "GNC" or the "GNC Defendants") respectfully offer this submission

in support of centralization of the various herbal supplement lawsuits.  Specifically, GNC agrees

that the various cases filed against it[1] relating to herbal supplements, plus any tag-along actions,

should be transferred to a single district judge for coordinated or consolidated pretrial

proceedings pursuant to 28 U.S.C. § 1407.  Such a transfer is necessary to conserve the courts'

---

[1] These cases include: *Clemmons v. General Nutrition Corp.*, No. 15-cv-05036 (W.D. Ark.);
*Cummins v. General Nutrition Corp*, No. 15-cv-00908 (C.D. Cal.), *Torre v. GNC Holdings, et
al.*, No. 15-cv-00561 (C.D. Cal.); *Hale v. Walgreen Co.*, No. 15-cv-1182 (N.D. Ill.); *Reyes v.
General Nutrition Corp., et al.*, No. 15-cv-20513 (S.D. Fla.); *Dufault v. GNC Holdings Inc.*, No.
15-cv-00050 (D.N.H.); *Niedermayer v. GNC Holdings, Inc.*, No. 15-cv-01829 (D.N.J.);
*Shahrashian v. Wal-Mart Stores, Inc., et al.*,  No. 15-cv-978 (C.D. Cal.), *Wright v. GNC
Holdings, Inc.*, No. 15-cv-00566 (E.D. Pa.); *Dore v. GNC*, No. 15-cv-20618 (S.D. Fla.);
*O'Donnell v. GNC Holdings, Inc., et al.*, No. 15-cv-10288 (D. Mass.); *Mager v. GNC Holdings*,
*et al.*, No. 15-cv-0267 (N.D. Ohio); *Linsalata v. Walgreen Co.*, 15-cv-1189 (E.D.N.Y.); *Sharkey
v. GNC Holdings, Inc.*, No. 15-cv-01020 (S.D.N.Y.); *Oravecz v. Walgreen Co., et al.*, No. 15-cv-
0218 (E.D. Wisc.); *Angiulli v. Walgreen Co., et al.*, No. 15-cv-00156 (S.D. Ohio); *Lumbra v.
General Nutrition Corp.*, No. 15-cv-177 (N.D.N.Y.); *Frazier v. General Nutrition Corp.*, 15-cv-
158 (W.D.K.Y.); *Shen v. GNC Holdings, Inc.*, No. 15-cv-984 (E.D.N.Y.); *Mourino v. GNC
Holdings, Inc.*, No. 15-cv-1427 (C.D. Cal.); *Howes, et al., v. General Nutrition Centers, Inc., et
al.*, No. 15-cv-02168 (N.D. Ill.)

and parties' resources and to avoid inconsistent rulings.  To maximize the efficiencies associated with centralization, all of the various supplement-related actions, including those against Wal-Mart, Target, and Walgreen, should be transferred to a single district court to proceed as separate MDLs that can, as necessary, be coordinated for pre-trial purposes.[2]  Transfer to a single district judge is warranted because the supplement cases involve similar allegations against defendants and blindly followed an investigation by the New York Attorney General, but separate multi-district litigations ("MDL") for each defendant are necessary because the defendants are competitors who offered different supplements that may have involved different sourcing, manufacturing, distribution, and sales.

GNC further urges that the cases be transferred to the United States District Court for the Western District of Pennsylvania because: (i) GNC's headquarters is based in Pittsburgh where its witnesses and documents are located; (ii) the Western District of Pennsylvania is centrally located and convenient to all of the other defendants; (iii) the Pittsburgh international airport is readily available to all parties; (iv) the Western District of Pennsylvania has several judges with meaningful MDL and complex litigation experience; and (v) the Western District of Pennsylvania does not have the MDL docket congestion of districts in some of the larger cities being recommended.

---

[2] *See In re  GNC Herbal Supplements Litigation*, MDL No. 2621 (J.P.M.L.), Doc. No. 18, Combined Response of Plaintiffs Robin Chrystal Hale and Kaitlyn Pirtle in Support of Motion to Transfer and Consolidation of Four Supplement MDLs in the Northern District of Illinois Pursuant to 28 U.S.C. § 1407; *see also In re Walgreens Herbal Supplements Marketing and Sales Practices Litigation*, MDL No. 2619 (J.P.M.L.), Doc. No. 28 (expressing support for centralization of "all of the related herbal supplements actions of MDL Nos. 2619-2622.); *In re Wal-Mart Stores, Inc., Herbal Supplements Marketing and Sales Practice Litigation*, MDL. No. 2620, (J.P.M.L.) Doc. No. 72.

## **ARGUMENT**

A.   **The Panel Should Transfer The Herbal Supplements Cases Pending Against GNC To A Single Judge For Coordinated Or Consolidated Pre-Trial Proceedings Pursuant To 28 U.S.C. § 1407.**

The Panel should transfer the twenty-one actions pending against GNC (which are listed on Exhibit A hereto), and any tag-along actions, to the Unites States District Court for the Western District of Pennsylvania for coordinated or consolidated pre-trial proceedings.  Under 28 U.S.C. § 1407(a), the Panel may transfer cases for pre-trial proceedings if the cases involve "one or more common questions of fact" and transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

All of the complaints against GNC are based on the same operative factual allegations involving GNC's sale of store brand herbal supplements.  Plaintiffs variously allege (and GNC strenuously denies) that the Gingko Biloba, St. John's Wort, Ginseng, and Echinacea sold by GNC under its store brand label did not contain the ingredients advertised, but instead contained other, undisclosed ingredients.  *See, e.g.*, *Hale, et al. v. Walgreen Co., et al.*, No. 1:15-cv-01182 (N.D. Ill.), Complaint ¶¶ 1-4; *Wright v. GNC Holdings, Inc.*, No. 2:15-cv-00566 (E.D. Pa.), Complaint ¶¶ 1-11.  GNC denies the allegations in the complaints and maintains that its own and independent laboratory testing validates the label's ingredients.

The complaints – all of which were filed following the issuance of a cease and desist order by the New York State Attorney General – pursue the same theory of relief against GNC and assert similar trade practices and consumer protection claims.  *See, e.g.*, *Hale*, Complaint ¶¶ 58–277 (asserting claims under the unfair and deceptive practices act and/or consumer protection statutes of thirty-one different states); *Clemmons v. General Nutrition Corp.*, No. 15-5036 (W.D. Ark.), Complaint ¶ 56 (alleging that defendants' conduct violates the Arkansas Deceptive Trade Practices Act and the unfair and deceptive trade practices acts of all other states); *Wright*,

3

Complaint ¶¶ 66-88 (alleging violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law).  The complaints against GNC are also based on the same flawed testing, which the New York Attorney General used for all of GNC's supplements.  Accordingly, the various actions against GNC plainly involve the type of overlapping factual and scientific allegations necessary to support transfer and consolidation under § 1407.[3]

The likelihood of overlapping discovery between the cases against GNC favors transfer and consolidation.  Discovery in all of the cases against GNC is likely to include inquiries relating to manufacturing, formulation, quality control, testing, sales, advertising and related issues.  Centralization before a single judge as part of multiple MDLs will allow a judge to efficiently manage discovery and related issues.  *See In re Swine Flu Immunization Products Liability Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978) ("Transfer is thus necessary to prevent duplicative discovery concerning the same documents and witnesses and to eliminate the possibility of conflicting pretrial rulings.").

The likelihood of dispositive motion practice also favors transfer and consolidation.  It is GNC's position that all of the lawsuits are meritless because, among other reasons, they are all based on DNA barcode testing, which is not an accepted testing methodology because it fails to identify botanicals that are stripped of their DNA in the manufacturing process.  GNC performed scientifically valid FDA-approved chemical testing, which confirmed that GNC's herbal supplements contain the ingredients advertised.  Independent third-party laboratories have also completed their tests, which support the findings that the products comply with the FDA's regulations and are not adulterated or mislabeled.

---

[3] Although the actions involve common factual allegations within the meaning of § 1407, GNC does not concede that any of the actions can satisfy the requirements of Fed. R. Civ. P. 23(a) or can be certified as a class action.

Absent transfer and consolidation of the cases in a single federal court, GNC would have to pursue similar dispositive motions in all actions currently pending against it – an inefficient and wasteful exercise for the judiciary, the plaintiffs, and GNC.  It would also risk inconsistent determination of identical factual and legal issues – a result that strongly favors transfer and consolidation of cases in a single multidistrict litigation.  *See, e.g., In re Transocean Tender Offer Sec. Litig*., 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("the likelihood of motions for partial dismissal and summary judgment in all three actions . . . makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968) (the "remedial aim [of Section 1407] is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions").

The plaintiffs' expected request for class certification also supports consolidation before a single judge.  *In re Canon U.S.A., Inc. Digital Cameras Prods. Liab. Litig.*, 416 F. Supp. 2d 1369, 1370 (J.P.M.L. 2006) ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification)"); *In re Fine Paper Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978) (transferring cases to "eliminate any possibility of conflicting class and other pretrial rulings"), *aff'd*, 685 F.2d 810 (3d Cir. 1982).  Consolidation would eliminate the risk of inconsistent decisions on class certification-related issues, including bifurcation of discovery on class certification and merits issues, use of experts, and coordination of class certification briefing.  *In re Cement and Concrete Antitrust Litig.*, 437 F. Supp. 750, 752 (J.P.M.L. 1977) ("since duplicating or overlapping classes are sought in most of the actions, transfer to a single district is desirable in order to avoid the possibility of inconsistent class determinations").

Accordingly, the Panel should, at a minimum, transfer the twenty-one complaints pending against GNC, and any tag-along actions, to the Western District of Pennsylvania for coordinated or consolidated pre-trial proceedings.

###### B. The Panel Should Transfer All Of The Herbal Supplement Cases To A Single Judge To Proceed As Four Separate MDLs.

GNC supports the request made by certain plaintiffs to transfer all of the herbal supplement cases against GNC, Walgreen, Wal-Mart, and Target to a single district judge. GNC emphasizes, however, that the cases should proceed as four separate MDLs, organized by defendant, rather than as a single, massive MDL. Under this approach, a single judge would oversee all of the herbal supplement cases and the judge could, as appropriate, coordinate third-party discovery and related pre-trial practice.

Some of the same considerations supporting transfer and consolidation of the cases against GNC support transfer of all the herbal supplement cases to a single district judge. The dozens of complaints filed against Walgreen, Target, Wal-Mart, and GNC all contain similar allegations that the defendants sold store-brand herbal supplements that did not contain the advertised ingredients and that contained undisclosed ingredients. *See, e.g.*, *Hale*, Complaint ¶ 1, *Mager v. GNC Holdings, et al.*, No. 5:15-cv-00267 (N.D. Ohio), Complaint ¶ 4; *Shahrashian v. Wal-Mart Stores, Inc., et al.*, No. 2:15-cv-00978 (C.D. Cal.), Complaint ¶ 1. The various complaints also reference and rely on the cease and desist orders sent by the New York Attorney General to defendants in early February 2015. *See, e.g., Hale*, Complaint ¶ 3; *Mager*, Complaint ¶¶ 18-23; *Shahrashian*, Complaint ¶¶ 17-21. Accordingly, the herbal supplement lawsuits against Walgreen, Target, Wal-Mart and GNC involve sufficiently similar factual allegations to support transfer of all cases to a single district judge.

Transfer and consolidation of the herbal supplement cases before a single judge will also be more convenient for those plaintiffs who have sued multiple defendants.  It will also promote efficiency and judicial economy because it will allow one district judge to decide legal and factual issues that may overlap across the cases, and allow one district judge to coordinate discovery to, among other things, to ensure that third-parties are not subject to multiple depositions or other duplicative discovery.

At the same time, providing for separate MDLs for the defendants is necessary to account for, among other things, the fact that defendants are direct competitors at the retailer and manufacturer level who sold their own proprietary supplements.  The Panel has previously acknowledged that it is "typically hesitant to centralize litigations against multiple, competing defendants which marketed, manufactured, and sold similar products." *In re Yellow Brass Plumbing Components Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012).  The Panel has recognized that where, as here, centralization is nevertheless appropriate cases against different manufacturers can be organized into separate MDLs and centralized in a single district. *See In re American Medical Systems, Inc. Pelvic Repair System Products Liability*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012) (centralizing product liability cases involving pelvic mesh before single district judge to proceed as three separate MDL cases against three separate groups of manufacturers); *see also In re Cook Medical, Inc., Pelvic Repair System Product Liability Litig.*, 949 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013) ("In centralizing MDL Nos. 2325, 2326, 2327, and 2387 in the Southern District of West Virginia, we did not seek to determine whether the products manufactured by each defendant group were similar to any significant degree.  Indeed, we chose to keep each MDL as a separate litigation.")

The Panel should preserve separate MDLs for each of the four defendants.   The differences between defendants and their respective supplements and the classes sought to be certified will likely mean that the scope and focus of discovery will vary between the cases (depending on, among other things, the number of supplements involved, the size and structure of defendants, and on how the defendant utilized third parties), and as a result, so will the parties' case schedule.   These differences will also likely impact the parties' need for a stipulated protective order/confidentiality agreement and the appropriate terms of such agreement, and other potential pre-trial rulings.   GNC acknowledges that, as in *In re American Medical Systems* and *In re Cook Medical*, there are overlapping factual allegations between the cases and there are numerous, material factual differences between the cases that are likely to predominate.   These factual differences include, but are not limited to, the specific herbal supplements sold by defendants, how they were manufactured, how the ingredients were sourced, how they were distributed, and how they were advertised and sold to consumers.

Contrary to the arguments advanced by the *Hale* plaintiffs, there is no basis for the Panel to abandon separate MDLs for the defendants in favor of a single oversized MDL.   As noted above, separate MDLs are necessary because the cases involve different defendants who sold different herbal supplements that may have involved different manufacturing, sourcing, distribution, packaging, advertising, and sales.   Allowing the cases to proceed as separate MDLs before a single judge does not present a risk of inconsistent decisions on legal issues or unnecessary duplication of efforts.   *See Hale*, Response at 6.   All of the supplements cases are in their infancy, and if transferred to a single district judge, discovery and other pre-trial practice can be coordinated, as necessary, among the four MDLs.   *See In re American Medical Systems*,

*Inc.*, 844 F. Supp. 2d at 1361 ("Centralization of the three MDLs in one court will allow for coordination of any overlapping issues of fact in such multi-product, multi-defendant actions.")

The district court will be able to manage third-party discovery to ensure that third-parties are not subject to multiple depositions or inconsistent rulings. To the extent the parties believe there is further overlapping discovery between the cases, it, too, can be coordinated. Additionally, if as the *Hale* plaintiffs suggest, multiple defendants assert legal challenges to DNA barcode testing or raise preemption arguments, the district court can ensure the briefing is done on a coordinated basis. *See id.* In sum, the herbal supplements cases do not need to be thrown in a single, massive MDL in order to achieve economy or efficiency.

**C.    The Panel Should Centralize The Herbal Supplements Cases In The Western District Of Pennsylvania.**

Although there appears to be broad agreement among the parties that the supplements cases should be centralized, the parties disagree on the transferee forum. The Panel ordinarily evaluates several factors in determining the appropriate transferee forum, including the location of the parties and evidence as well as docket conditions. *See, e.g.*, *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013). These factors strongly favor centralization of the various supplement cases in the Western District of Pennsylvania:

- GNC is based in Pittsburgh, Pennsylvania. *See In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 780 F. Supp. 2d 1379, 1382 (J.P.M.L. 2011) (centralizing cases in the Eastern District of Kentucky because, among other reasons, one of the defendants was based in forum); *In re White Consol. Indus., Inc. Envt'l. Ins. Coverage Litig.*, 1994 WL 52568, at *1 (J.P.M.L. Feb. 16, 1994) (relying on location of defendant headquarters as a basis for centralization).

- GNC's witnesses and documents are located predominantly in the Western District of Pennsylvania. *See In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d at 1378 (centralizing cases in the District of New Jersey rather than the Northern District of California because it was closer to potential witnesses and evidence located in New York City and New Jersey).

- Pittsburgh is conveniently located between the various defendants, who are based in Illinois, Arkansas, and Minnesota. *See In re TJX Cos., Inc.*, 505 F. Supp. 2d 1379, 1380 (J.P.M.L. 2007) (noting importance of selecting transferee forum that is "centrally located" when parties are located in multiple districts).

- The Western District of Pennsylvania is readily accessible via the Pittsburgh international airport which offers 155 non-stop flights per day. *See In re Resource Exploration*, *Inc. Sec. Litig*., 483 F. Supp. 817, 823 (J.P.M.L. 1980) (ordering transfer to the Southern District of New York over the Western District of Louisiana in part because although evidence was located in Louisiana, the Southern District was a more accessible location).[4]

- Downtown Pittsburgh also has more than 4500 hotel rooms with average prices far lower than in San Francisco, New York and other major cities.[5]

- The Western District of Pennsylvania also has "favorable caseload conditions."  *See In re Maxim Integrated Prods. Inc., Patent Litigation*, 867 F. Supp. 2d 1333, 1336 (J.P.M.L. 2012).

- The Western District of Pennsylvania has only three MDLs[6] and it has several active judges with substantial MDL and complex litigation experience.[7]

When considered together, these factors demonstrate that the Western District of

Pennsylvania is an appropriate and convenient transferee forum for the herbal supplements

litigation.  The fact that, to date, no plaintiffs have filed a herbal supplement-related suit in the

W.D. Pa. does not undercut the selection of the Western District of Pennsylvania as transferee

---

[4] http://www.flightstats.com/go/Airport/airportDetails.do?airportCode=PIT

[5] *Pittsburgh Downtown Partnership, State of Downtown Pittsburgh 2014*, available at http://www.downtownpittsburgh.com

[6] *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2015.pdf (last viewed March 24, 2015).

[7] Chief Judge Conti, Judge Schwab, and Senior Judge Ambrose are overseeing the MDL cases in the Western District of Pennsylvania.  Based on the number of cases still pending compared to the total, these multidistrict proceedings appear to be winding down. http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March -16-2015.pdf (last viewed March 24, 2015).  Judge Fischer also has substantial MDL experience.

forum. *See In re BP p.l.c. Securities Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) ("that no constituent action is currently pending in the Southern District of Texas is not an impediment to its selection as the transferee district"); *In re GNC Corp. Triflex Products Marketing and Sales Practices Litig.*, 988 F. Supp. 2d 1369, 1370 n.3 (J.P.M.L. 2013) ("Although no constituent action is currently pending in the District of Maryland, that is not an impediment to its selection as the transferee district."); *In re Darvocet,* 780 F. Supp. 2d at 1382 (centralizing cases in the Eastern District of Kentucky even though no cases were pending in forum); *In re Swine Flu Immunization Products Liab. Litig.*, 446 F. Supp. at 247 ("we believe that the District of the District of Columbia is the preferable transferee forum for this litigation, even though none of the actions yet filed in this litigation is pending there"); *In re Cement & Concrete Antitrust Litig.*, 437 F. Supp. 750, 753 (J.P.M.L.  1977) ("In appropriate circumstances we would order a group of actions to a district in which none of the actions is pending.").

The requests made by various plaintiffs for centralization in other districts are misplaced.[8]  The Northern District of California and the Southern District of Florida do not have any nexus or logical connection to the defendants.  The defendants are not based in or near these districts, and there is no basis to believe that evidence regarding corporate level decisions would be located in either district.  The districts are also not conveniently located for the defendants. Indeed, transfer would require GNC to travel approximately 2,200 miles to the Northern District of California or over 1,000 miles to the Southern District of Florida.  *See, e.g., In re Nickelodeon*, 949 F. Supp. 2d at 1378.

---

[8] *See, e.g., In re GNC Herbal Supplements Litigation* (J.P.M.L.), Doc. No. 1, Plaintiffs' Motion for Transfer of Actions to the Southern District of Florida Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings, Doc. No. 1

There are eight (8) pending MDLs in the Southern District of Florida and the weighted case filings are more than double in the Southern District compared to the Western District of Pennsylvania (695 vs. 312).[9]  Additionally, there are seventeen (17) MDLs in the Northern District of California and the weighted case filings are substantially greater in the Northern District compared to the Western District of Pennsylvania (593 vs. 312).[10]

---

[9] http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2014.aspx (last viewed March 24, 2015).

[10] http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2014.aspx (last viewed March 24, 2015).

If the Panel declines to centralize the cases in the Western District of Pennsylvania, GNC requests that it centralize the cases in the Northern District of Illinois because Chicago is readily accessible by air travel, another defendant is based in Chicago, and although the District has many active MDLs, it has a number of judges with substantial MDL experience.

## <u>CONCLUSION</u>

For the reasons outlined above, the GNC Defendants respectfully request that (i) the Panel transfer the actions identified in Exhibit A, as well as any tag-along cases, to the United States District Court for the Western District of Pennsylvania for coordinated or consolidated pretrial proceedings; (ii) *In re GNC Herbal Supplements Litigation*, MDL No. 2621, *In re Walgreens Herbal Supplements Litigation*, MDL. No. 2619, *In re Wal-Mart Herbal Supplements Litigation*, No. MDL 2620, *In re Target Herbal Supplements Litigation*, MDL No. 2622, be centralized before a single judge to proceed as separate MDLs; and (iii) if the Panel does not select the Western District of Pittsburgh, it should select the Northern District of Illinois as the transferee forum.

Dated:  March 25, 2015                                  Respectfully submitted,

|  | */s/ John P. Hooper*_____ |
|--|--|
|  | John P. Hooper |
|  | REED SMITH LLP |
|  | 599 Lexington Avenue |
|  | New York, NY  10022-7650 |
|  | Telephone: +1 212 521 5400 |
|  | Facsimile: +1 212 521 5450 |
|  | JHooper@reedsmith.com |